JOHN L. EMMONS *& als.*, *in sci. fa.*, *versus* ROBERT BRADLEY *& als.*

In *scire facias* against alleged trustees, claiming to charge them upon the ground of their being mortgagees in possession of mortgaged goods, the declarations of the principal defendant's clerk, importing that he claimed to be in possession of the goods for the mortgagees, are not admissible as evidence of his agency.

Neither, in such case, is the extra-official statement in the return of an officer attaching the mortgaged goods, that, "in consequence of and compliance with" the mortgagees' notice to him of their claim under their mortgage, he "restored" the goods to the mortgagees, evidence against them.

In such case, an overstatement of their claim, by a comparatively small amount, made by the mortgagees in their notice to an attaching officer, is not conclusive evidence of an intent to delay other creditors of the mortgager.

A mortgagee of the goods and accounts of his debtor, is not obliged to collect the accounts and apply their proceeds *pro tanto* to the discharge of his claim upon the goods, to aid other creditors, not secured.

A bill of sale of chattels, absolute in its terms, but intended as security only, is not conclusive evidence of a fraudulent intent of delaying creditors.

The presentment of their claim under a mortgage of goods, by the mortgagees to an attaching officer, cannot be considered as equivalent to the actual taking of possession, so as to render the mortgagees chargeable as trustees.

BARROWS, J.—The defendants, being residents of the county, and having heedlessly suffered a default to be recorded against them in the original suit, are liable to pay the costs of this proceeding, at all events; and, as that is a

claim accruing subsequent to the filing of the petition of Bradley, Coolidge & Rogers in bankruptcy, their liability to such judgment would not be affected thereby, and the plaintiffs are entitled to this judgment against all the defendants.

A careful examination of the disclosures and evidence satisfies us that this is all they can justly claim against either.

The attempt on the part of the plaintiffs, as creditors of Isaac B. Bean, is to hold the defendants as his trustees, either as having taken a mortgage of personal property from him with a design to defraud his creditors, or as being mortgagees in possession at the time of the service of the original writ upon them. If either position were established, the defendants could not be discharged.

It seems that, on the 4th of December, 1865, Bean was owing Bradley, Coolidge & Rogers something over $4000, and Jefferson Coolidge & Co. about $500, and, on that day, Mr. Bradley went, with the demands of his own firm, and also that of J. Coolidge & Co., which he was authorized by them to collect, to Saco to obtain payment or security. He found Bean's goods under attachment at the instance of three different creditors, and took from Bean a mortgage of the stock in the store occupied by them, appraised by the attaching officer at $2607,18, and, by Bean, at $3519,65, and of corn, flour and grain, in another store, to the amount of $1285, and of his book accounts, nominally amounting to about $8000, running to his own firm and to Jefferson Coolidge & Co., as mortgagees, to secure the amounts then due from Bean and subsequent advances, with provision that Bean should remain in possession until the mortgagees should deem it necessary to take possession for their better security; and, at the request of Bean, he paid to the three creditors who had attached, apparently from his own funds or by his own individual credit, sums amounting to about $1375, to relieve the goods from attachment.

He also received from Bean, the next day, as further se-

curity, an absolute bill of sale of a mare, top buggy, sleigh, harness and grocery wagon, valued at $475, running to Bradley, Coolidge & Rogers, and duly recorded upon the town books of Saco. It is not pretended that any of this property went into the actual possession of any of the mortgagees, except the stock in the store occupied by Bean. As to that portion of the mortgaged property, it appears that, on the 5th of December, these plaintiffs attached this stock and also the flour, corn and grain, upon a writ against Bean; that, on the 8th, Bradley, Coolidge & Rogers formally, in writing, notified the officer making the attachment of their claim under the mortgage, asserting that there was due them on the mortgage $4584,06; and Jefferson Coolidge & Co. gave a like notice, stating the amount of their claim; whereupon, on the 11th, the plaintiffs abandoned the attachment, and, on the 12th, caused both firms to be summoned as trustees.

To charge the defendants as mortgagees in possession, the plaintiffs rely upon the testimony of Emmons, the deputy sheriff, that, when he went in to attach the stock, Bean's clerk claimed to be in possession for Mr. Bradley. But the statement of Bean's clerk was not evidence of his agency for Bradley, and was properly objected to by the defendants, and must be rejected. They rely, further, upon the return made by the officer upon their writ against Bean, setting forth the attachment, and making a statement of the notices given him by the mortgagees, and adding that, " in consequence of and compliance with said claims, I restored said goods and chattels and stock to the said Bradley, Coolidge & Rogers and Jefferson Coolidge & Co., the claimants and mortgagees thereof." It is plain that this extra-official statement about a restoration in the officer's return, (which was apparently a preliminary to the commencement of the trustee process on the next day,) is not evidence against the defendants; and it is inconsistent with the officer's deposition, by which it appears that he kept possession of the stock himself, having one Getchell there as a keeper for

some days afterwards, upon a writ in favor of another party, placed in his hands by Mr. Eastman. The attaching officer and the mortgagees could not both have been in possession at the same time, and the officer's deposition taken by the plaintiffs, upon the whole, goes very clearly to negative the possibility of the mortgagees or any of them having a possession, actual or constructive, at the time of the service of the trustee writ.

But the plaintiffs rely, further, upon an answer of Mr. Bradley in his disclosure, to the effect that, after hearing of the attachment made by the plaintiffs, "I requested a clerk of said Bean to notify him of the mortgage and to keep possession of the goods for Bradley, Coolidge & Rogers, and they remained in possession of the officer, the clerk of Bean remaining in the store until the trustee writ, in the original suit, was served on me." Here was manifestly an attempt on the part of Bradley, Coolidge & Rogers to take possession of this portion of the mortgaged property, and, in the absence of the officer's testimony, showing that he still had possession under Mr. Eastman's writ, we should have been at liberty to infer that that firm went into possession of the stock as mortgagees, upon the relinquishment of the plaintiffs' attachment. But the statement of Bradley is not, as the plaintiffs' counsel argues, that Edgecomb, the clerk, retained possession of the goods for him till the service of the trustee writ, — but that they remained in the possession of the officer, the clerk remaining in the store; and the officer's testimony is explicit on that point, as we have just seen.

The disclosure of Jefferson Coolidge & Co. is direct, that they never had any possession of any portion of the mortgaged property, and never authorized any one to take possession for them of any portion of it; and there is no legal evidence in the case tending to show that they ever had any possession or endeavored to obtain it, or that Mr. Bradley assumed to do it for them. Nor is there the remotest reason for suspicion that they acted in this matter with any

fraudulent design. On Bradley's promise to pay Bean's indebtedness to them, they joined in an assignment of the mortgage, made a few days after these transactions, to Cotton Bean, the father of the debtor, who came forward and gave his notes to Bradley, Coolidge & Rogers for $4000, for the mortgage, they being apparently willing to make a liberal discount for the sake of getting bankable paper in lieu of their overdue debt and mortgage security.

Notwithstanding the ingenious attempt of the plaintiffs' counsel to excite a suspicion that here was a deep laid design to defraud and delay Bean's creditors, we are not able to see anything more in the whole transaction, so far as any of the mortgagees were concerned, than an earnest effort to secure payment from a failing debtor. Much stress is laid by plaintiffs' counsel upon the fact that Bradley, Coolidge & Rogers overstated their demand by about $300, in their notice to the officer. If the plaintiffs had not abandoned their attachment, but defended a suit against the officer, this might have availed them, but an error of comparatively small amount in transactions so large, does not go far to show a fraudulent intent. When they gave their notice, they might have supposed that some of Bradley's advances to pay off the attaching creditors, which were subsequently otherwise provided for, might be protected by the mortgage; or the mistake might otherwise be readily accounted for without imputing fraud.

Plaintiffs' counsel dwells also upon the amount of property conveyed as security. But it is plain that the whole value of the tangible property could not have exceeded $1500, (at the officer's estimate it was some hundreds less,) and though the nominal amount of security is largely increased by the addition of the book accounts, the fact, which appears, that even in the hands of the debtor only 25 per cent. had been realized on them in two years, shows conclusively that a large part were worthless. It is insisted that the mortgagees should have collected the accounts, and

that all that has now been collected on them should be applied in reduction of their demands, leaving them chargeable for a surplus of the tangible property; and the case of *Webb* v. *Peele*, 7 Pick., 247, is relied on.

But there is no law by which a creditor, holding security upon different kinds of property, can be compelled to select that which is least convenient and available to himself, in order to aid other creditors, not secured, in the collection of their demands. Such a claim was urged and denied in *Lupton* v. *Cutter & Trs.*, 8 Pick., 298, and *Gore* v. *Clisby & Trs.*, 8 Pick., 555, and *Tucker* v. *Clisby & Trs.*, 12 Pick., 22.

In *Webb* v. *Peele*, 7 Pick., 247, the absolute conveyance of the real estate was held to be a payment *pro tanto.*

Again, it is claimed that there is proof of fraudulent connivance with Bean, because the conveyance of the horse and carriages was by bill of sale, in form absolute. As to this, it may be said, in the language of PARKER, C. J., in *New England Marine Ins. Co.* v. *Chandler & Tr.*, 16 Mass., 279,—" In the case of a bill of sale or other conveyance of property, apparently absolute, proof of any secret trust or agreement inconsistent with the tenor of the agreement, [conveyance?] is undoubtedly evidence of a fraudulent bargain, made for the purpose of defeating or delaying creditors. This is mentioned in *Twyne's case* as one of the badges of fraud. But it is not fraud in itself, or conclusive evidence of fraud." When the bill of sale was made, Bradley had just been making considerable advances in order to relieve the property to which his firm were to look for security, from attachment, and, though these advances were afterwards otherwise provided for, the taking of the bill of sale, under such circumstances, can hardly be considered as satisfactory proof of a design to defraud the other creditors of Bean.

Upon the whole case, we hold that the presentment of a claim under the mortgage, on the part of the mortgagees, to an attaching officer, cannot be considered as equivalent

to the actual taking of possession by the mortgagees, so as to make them chargeable as trustees, unless they thereupon go into actual uncontrolled possession. Such actual possession does not appear, and the mortgagees had a right to dispose of their mortgage in such manner as they deemed most for their own interest; and are entitled to their discharge here, while, as they did not appear in the original suit, there must be     *Judgment for plaintiffs for their costs.*

APPLETON, C. J., KENT, WALTON and DICKERSON, JJ., concurred.

DANFORTH, J., did not sit.

*E. B. Smith*, for the plaintiffs.

*Davis & Drummond*, for the defendants.