# Ross v. Duggan et al.

1. A deed absolute on its face, but intended as a mortgage, is not fraudulent and void as to creditors. Under the weight of authority such a conveyance is an indication of fraud merely as against existing creditors, not conclusive evidence of fraud, and may be removed by evidence of an honest intent.

2. A person having two funds out of which to satisfy his demands, shall not in equity by his election disappoint a party who has only one fund. The assertion of the principle is not affected by the nature of the property which constitutes the double fund, but applies wherever a paramount creditor holds collateral security, or can resort collaterally to other real or personal property for the satisfaction of his debt.

The prior incumbrancer is entitled to notice of the junior claim, and of the intention of the junior creditor to compel the former to make his election in compliance with this principle.

The rights of the junior creditor to have this principle administered is ordinarily enforced by a decree of subrogation.

To charge the senior creditor, after notice, he must be shown to have been a willful party to the dissipation or loss of the fund.

Where the second fund consisted of chattels remaining in the hands of the debtor,—*held* that the senior would not be accountable as for a perfect security.

3. This court cannot consider matters of evidence upon stipulation merely, and not properly brought up by the record.

*Appeal from District Court of Arapahoe County.*

THE appellant, Ellen Ross, filed her bill of complaint in the District Court of Arapahoe County, substantially as follows: That about the 19th of March, 1866, James Duggan was indebted to J. Bright Smith, in the sum of $1,000; whether the indebtedness was evidenced by note was unknown. That on said day Duggan conveyed to Smith certain real estate described, to secure said indebtedness, and future advances; that the deed was in fee, but intended and received as a mortgage. Complainant was not informed when the indebtedness to Smith was due, but averred on belief that it was not to exceed three years from said day. Said deed was

duly recorded; that it contains a clerical error in the use of the word " corner" for the word " quarter" in describing said real estate; that about 20th April, 1870, Duggan and Smith had a settlement of their accounts, at which it was found Duggan was indebted to Smith in the sum of $2,791.98; said indebtedness so due from Duggan to Smith was for a valuable consideration conveyed to the complainant, and that the property thus conveyed to secure the same, was also conveyed; that Duggan executed his promissory note to the complainant in said sum on said day; that on said day Smith, with the knowledge and consent of Duggan, conveyed said property to the complainant, complainant receiving the same as security for Duggan's note; that on 31st October, 1870, said note and interest being unpaid, Duggan then being indebted to complainant $3,116.25, executed and delivered to complainant his promissory note that day for said sum, payable to complainant one year thereafter; that complainant retained said real estate as security for said note; that on 31st May, 1873, complainant recovered judgment on said note in said district court against said Duggan for $5,278.60; that on 20th May, 1874, execution was issued thereon; 20th August, 1874, execution returned *nulla bona.* Said judgment nor interest has been paid to the complainant by Duggan. Duggan has no other real estate than that described and conveyed to the complainant; has no adequate remedy at law, and is remediless except in equity. That the fee of said property is in complainant, redeemable nevertheless in equity by Duggan on payment of judgment and interest; that Duggan refused to pay said note and interest prior to obtaining said judgment; that certain other parties, naming them, have or claim some interest in the property, the nature of which is unknown to complainant, but whatsoever it is, it occurred subsequent to complainant's lien. Names parties defendant and prays they be summoned. Prays that an account may be taken of what is due complainant upon said judgment; that defendants be ordered to pay the amount found to be due upon such account within

a short time, and that in default thereof the said mortgaged premises be sold under decree of the court, and proceeds applied in satisfaction of said debt, costs and charges, and defendants, or persons claiming by, through or under defendants subsequent to the commencement of this suit, be forever barred and foreclosed, etc. In case money arising from sale of said premises be insufficient to pay the amount due, the balance due complainant shall be made by levying on any other property or estate of the said Duggan.

A decree *pro confesso*, was entered against James Duggan Edward Seiber, P. P. Wilcox, Elias Brown, Peter Magnes, and other defendants.

Mary A. Duggan and John Dee, defendants, answered substantially as follows: Defendants not advised that on 19th of March, 1866, Duggan was indebted to Smith in any sum. Admit that at the time specified Duggan was seized in fee simple of said lands as alleged; that at said time, 19th March, 1866, Duggan was largely indebted to one Martin and other creditors, the same being due, and said creditors were pressing said Duggan for payment. Admit that on said ·day Duggan executed and delivered to said Smith an absolute deed for said premises, but whether or not the same was intended as mortgage to secure the existing debt, and further advances that might be made thereon, defendants not advised and cannot admit or deny, but allege that said deed was made to delay, hinder and defraud the said Martin and other creditors of the said Duggan in the collection of their just debts. Cannot state when Duggan's indebtedness to the same accrued if any such indebtedness existed. Admit that said deed from Duggan to Smith was recorded as alleged. Cannot admit or deny that Smith and Duggan had a settlement on 20th April, 1870. Allege that on 8th of October, 1868, Duggan made his promissory note to Smith for $2,000, which said note defendants charge was in full of all indebtedness from Duggan to Smith. At the same time to secure said note, Duggan made and delivered to Smith a chat-

tel mortgage upon a large amount of personal property, describing the same. Allege the value of said property $3,000; that note and mortgage were accepted by Smith as a full payment of said supposed indebtedness from Duggan to Smith. Said mortgage duly recorded, etc. That on 17th September, 1868, Martin for himself and for his firm, brought suits against Duggan in said district court, and at the October term, same year, Martin recovered judgment against Duggan for $231 and costs, and Martin & Co. at the same time recovered judgment against Duggan for $1,365 and costs. Martin afterwards caused execution to be issued thereon to the sheriff in the usual form. The sheriff by virtue thereof sold said described lands to Samuel E. Browne. Afterwards, on the 4th day of November, 1869, sheriff's deed given to said Browne for all of the said lands. Allege that by virtue thereof Browne became the owner in fee of said property; of all of which said Smith had notice; that at said time Smith had and held said chattel mortgage upon said personal property of said Duggan, and that said property then remained and was in the possession of the said Duggan, and was more than sufficient to have paid said debt from Duggan to Smith; that Smith neglected to take any proceedings to collect said debt, and that by such neglect the same, i. e., the personal property, became and was wholly lost; that said personal property was left in the hands and possession of said Duggan by said Smith, until after the lien of said chattel mortgage expired, and that now the same has passed out of the hands and possession of Duggan, and Duggan is insolvent and unable to pay the debt; that the complainant is the assignee of Smith, and that she took the same with full notice of all the premises, and is not therefore entitled to have said pretended mortgage enforced in equity against the defendants, who are the assignees of said Browne for a valuable consideration. Cannot admit or deny that on 20th April, 1870, said Smith and said Duggan had a settlement of the accounts between them, and that Duggan fell indebted to Smith $2,791.98.

Defendants allege that at that time neither Duggan nor Smith could do anything to affect the rights of said Browne in and to said premises, nor the defendants' vendors; that at the time Browne became the owner of said land, said Smith held said chattel mortgage against said personal estate of Duggan; that said mortgage covered and was a valid lien upon said personal property of Duggan, and that the same was sufficient in value to pay Duggan's debt to Smith. Allege that Smith, by neglecting to collect his debt from Duggan out of said personal property, thereby lost all lien which he then had upon said lands, and that defendants now are, by virtue of said purchase, the owners of said lands and premises, and ought not in equity to be compelled to pay said debt from Duggan to Smith. Denies that the debt of Duggan to Smith was transferred to complainant with consent of Duggan. Admit that on 20th April, 1870, Smith conveyed to complainant by absolute deed said lands; deny that Smith had any right or authority of law to make such conveyance, and that the same was not made with the consent of Duggan. Cannot admit or deny that at that time Duggan made to complainant his promissory note. Deny that at the time stated Smith had any right or interest in said lands which he could convey to complainant. Allege at the time of deed from Smith to complainant, Duggan had no power or authority to make any bargain or agreement to bind said land; that at said time, viz: 19th April, 1870, the whole of Duggan's interest in said lands had been sold as aforesaid, and was then vested in said Browne, and that said Duggan or Smith had no right to make the conveyance to complainant. Allege that on 7th February, 1872, Mary A. Duggan, one of the defendants, bought all the rights, title and interest in said realty in Browne of him for $2,000, and on the same day said Mary A. made and delivered to James O'Neal a mortgage to secure the payment of a note of that date for $2,100 and interest; that after default had been made by said Mary A. in the payment of said note, a bill in chancery was filed to foreclose said mortgage; that afterwards, by virtue of a decree of the

court, said realty was sold by a master in pursuance of said decree of foreclosure to John Dee, for the sum of $3,000; that the sale was confirmed by the court, and after the time allowed for redemption the Master made a deed thereof to said Dee, conveying all the right, title and interest of the said Mary A. in and to said realty. Allege that on 31st October, 1870, James Duggan made his note to the complainant for $3,117.27 ; that at said time said Duggan made chattel mortgage to the said Ross on certain personal property, describing it, of the value of $3,500 ; mortgage being made to secure the payment of said note, and all of said alleged indebtedness of Duggan to complainant. Allege that at time complainant took said note and chattel mortgage she knew that said Browne was the owner by purchase as aforesaid of the interest of said James Duggan in and to said realty. Allege that said Smith neglected to collect money due from Duggan to him upon the said note and chattel mortgage, and that complainant neglected to collect money said to be due to her from said Duggan upon said note and chattel mortgage, although the property covered by said chattel mortgage was of more than sufficient value, if sold, to pay and satisfy said note. By reason whereof defendants allege they are released from the payment of any money supposed to be due from Duggan to Smith or complainant, and that said lands and premises are, and of right ought to be, free and discharged from any lien thereon; that the property covered by chattel mortgage from Duggan to complainant, was by complainant permitted to remain in the possession of Duggan until after maturity of the note; and that the lien of said mortgage was lost by neglect of complainant, and is not now a lien on said property, although complainant was duly notified by Browne to collect the same, and to take possession of the said property and sell the same in discharge of the note. Allege Duggan's insolvency and inability to pay complainant, and that if defendants are compelled to pay the same they will be unable to collect it from Duggan. Admit complainant sued Duggan in district court. Allege that it was wholly undefended by Duggan. Admit

the issue of the execution thereon, but cannot admit or deny as to the return of the sheriff. Cannot admit or deny that James Duggan is indebted to complainant. Deny that the legal estate of said lands is vested in complainant, but submit that the same is a question of law and equity, to be decided by the court, and therefore pray to be hence discharged.

Afterward James O'Neal filed his bill of complaint against Ellen Ross, the same being substantially as follows:

That on 19th March, 1866, James Duggan owned in fee certain lands (description thereof), the same being the land described in Ellen Ross' bill. That on said 19th March, 1866, Duggan was heavily in debt, embarrassed and in failing circumstances financially; was sorely pressed and annoyed by his creditors; that he and one J. Bright Smith on said day combined, conspired and confederated together to cheat said creditors of Duggan, and in furtherance thereof, Duggan on said day pretended to convey said land to Smith with covenants of general warranty; that the pretended consideration in said deed is put down at $1,000. A copy of said deed annexed marked A. alleges that Duggan did not owe Smith anything on said day; that said pretended deed from Duggan to Smith was executed without any consideration; Smith never paid Duggan any part of said pretended consideration; that Duggan never received any consideration whatever from Smith or anyone else for said pretended conveyance, and that said pretended conveyance was nothing but a sham and fraud to deter and keep off the creditors of Duggan, and prevent them from collecting their debts, and notwithstanding said pretended conveyance remained the property of Duggan, and as such was liable for the just debts, and Smith never had anything more than a mere colorable title, with no interest in it whatever.

That on 8th Oct., 1868, said Duggan and said Smith again combined, etc., to cheat, etc., creditors of said Duggan, and in furtherance thereof Duggan did then pretend to give a chattel mortgage on personalty (describing it), then on farm of Duggan in Arapahoe county, which was pretended to be given to

secure payment of $2,553 on or before 7th Oct., 1870. Said chattel mortgage marked exhibit " B." That Duggan did not owe Smith anything on said 8th day of October, 1868; that although chattel mortgage expresses a consideration of $2,000, in truth Smith paid Duggan nothing for the same, and no consideration passed between them therefor, and Duggan never did receive any consideration, or any one else, therefor; that it was nothing but a sham, etc., and was done to keep said personal property from Duggan's creditors; that Smith and Duggan had succeeded admirably in hiding Duggan's real estate from Duggan's hungry creditors; hence they concluded to place Duggan's personal property under the protecting wing of Smith, and said pretended chattel mortgage was simply held by Smith to enable Duggan to use and reap the benefits of said personal property. Smith never attempted to enforce or foreclose said mortgage, but on the contrary stood by and permitted Duggan to dispose of the whole of said property for the sole use and benefit of Duggan without objection; that said Smith's conduct in the premises was in keeping with the objects and purposes for which said pretended chattel mortgage was given; that John H. Martin at the October term, 1868, of said district court of said county, recovered a judgment against James Duggan for $231 and costs; and that John H. Martin and Clifton A. Barnes recovered judgment at the same time in the same court against James Duggan for $1,365.99; that execution issued on both of said judgments on the 21st day of December, 1868; that the sheriff by virtue thereof levied upon said lands, and sold the same to S. E. Browne; that on 4th of November, 1869, sheriff executed deed therefor to Browne, which was recorded and is marked exhibit " C;" that Browne continued to own said lands until 7th February, 1872, and that on 20th April, 1870, Duggan, Smith and Ross combined, etc., to cheat said Browne and defeat his right, etc., in and to said lands, and that in furtherance thereof, they did on said day pretend to convey said lands to Ross by quit-claim deed, the consideration expressed in said deed being $2,800, a

copy of said pretended deed being attached, marked exhibit "D." That Duggan did not owe Smith or Ross anything on said day; that Smith nor Ross was creditor of Duggan on said day; said pretended deed from Smith to Ross was executed without consideration; that Ross never paid Smith or Duggan any part of said pretended consideration; that neither Smith nor Duggan ever received any consideration whatever from Ross or anyone else, for said pretended deed, and that the same was nothing but a sham and cheat, etc., upon the right, etc., of said Browne in said lands, and that said lands, notwithstanding said deed, remained the property of Browne, and Ross never had, and has not now, anything more than a mere legal title therein, really fraudulent and with no interest therein. Alleges that Duggan, notwithstanding said deed to Smith and the one from Smith to Ross, remained on said lands and continued to occupy them; that neither Smith nor Ross ever exercised any ownership or authority over said lands; that Ross, in order to fully carry out and consummate said fraud, together with Duggan and Smith, and in order to carry out said confederation, etc., induced Duggan to give her a pretended chattel mortgage on the 31st day of October, 1870, on the personal property described, said personal property being on said lands; said mortgage was pretended to be given to secure payment of $3,116.27, on or about 31st day of October, 1871. The same is marked exhibit "E." Alleges that said pretended chattel mortgage was given without consideration, and that Duggan did not pay Ross anything at that time, and that the same was a cheat, etc., and intended to defraud, etc., creditors of Duggan; that Ross never attempted to enforce the same, but, on the contrary, stood by and permitted Duggan to dispose of the whole of said personal property to the sole use and benefit of said Duggan without objection, and all Ross' conduct was in keeping with the object and purposes for which said confederacy, etc., was entered into. That on February 7th, 1872, Browne still being the owner of said lands, then and there conveyed the same to

Mary A. Duggan by quit-claim deed for $2,000 cash. Said deed was recorded, and is marked exhibit "F." That on said 7th February, 1872, said Mary A. Duggan gave her promissory note, payable six months thereafter, to complainant O'Neal, for $2,100, with interest from date until paid, at two per cent. per month for value received ; a copy thereof marked exhibit "G." That Mary A. Duggan on said 7th February, 1872, executed mortgage on said lands to secure said O'Neal the payment of said note, and that said James Duggan joined with her in the execution of said mortgage. The same was recorded. Is marked exhibit "H." That Mary A. Duggan did not pay said note at its maturity, and while same was past due and unpaid, said O'Neal, for a consideration, assigned the same to John Dee, and that afterwards, said note remaining unpaid, John Dee filed a bill in said court, April term, 1873, against said Duggan, to foreclose said mortgage for the purpose of paying said note. That at said term a decretal order was rendered therein and the premises were sold by a master in accordance therewith ; that said Dee bid in said land for $3,000, and the same was not redeemed ; and on the 16th of December, 1874, master executed a deed therefor to Dee ; that the proceedings were regular, &c. Said deed marked exhibit "I." That on 18th of March, 1876, Dee, for a consideration, conveyed said lands to O'Neal by quit-claim deed, marked exhibit "J;" makes Ross defendant to the bill. Answer under oath waived.

Prayer of bill: That defendant has no interest in said lands whatever; that she is merely the custodian of the legal title thereof, and holds the same in trust for O'Neal, who is the real and true owner thereof; that defendant, Ross, be compelled, within some short time, to be designated by the court, to convey to said O'Neal the title thereof; and in default thereof that a master be appointed a special commissioner to convey unto said O'Neal the said rights, etc., in and to said lands, and that should O'Neal be mistaken as to the nature of the relief sought, he prays for any other relief, or any different or general relief that he may be entitled to from the facts.

Afterward Ellen Ross answered the bill of O'Neil as follows:

Admits that on 19th March, 1866, Duggan owned the real estate described in fee simple; that on 19th March, 1866, Duggan conveyed the same with covenants of general warranty, but denies that at the time of the said conveyance to Smith, Duggan was heavily in debt, financially embarrassed and in failing circumstances, or either thereof, except the debt he then owed to Smith, and defendant avers that Duggan was then largely indebted to Smith. Defendant denies that Duggan and Smith on said 19th of March, combined and confederated together, etc. Admits the consideration in the conveyance was $1,000, and alleges that at the time deed was made Duggan was indebted to Smith in a large amount, about the sum of $1,000; that conveyance was given for the purpose of securing indebtedness then existing, and also such further loans debts and advances as should from time to time be made; and defendant denies that conveyance was a sham or fraud, etc., or made to deter or keep off the other creditors of Duggan, and prevent them from collecting their just debts, etc. Denies that after conveyance, said land remained the property of Duggan, and Smith had only a naked legal title without any interest therein. Defendant alleges that after said conveyance said Smith held the said land as security for said debt then due to him from Duggan, and likewise for further loans and advances, as before stated. Defendant admits that on the 8th of October, 1868, Duggan gave Smith a chattel mortgage upon certain personalties, as is set forth and described in said bill; but avers that whether said mortgage was given or not is wholly immaterial. Denies that on 8th of October, 1868, Duggan was not indebted to Smith; but on the contrary, Duggan was indebted to Smith in nearly the sum of $3,000 over and above all set-offs; and further avers that said chattel mortgage was given in good faith for the purpose of more effectually securing said indebtedness, and as additional security, and that afterwards, Smith elected to rely upon said mortgage upon the land, as he had a right to do. Denies that said chattel mort-

gage was a sham or cheat, or was given for the purpose of keeping said personalty from Duggan's creditors, but at the time the same was given, Duggan's indebtedness to said Smith had increased to nearly the sum of $3,000, in pursuance to the aforementioned understanding as to advances, to-wit, on said 19th of March, 1866. That on said 8th of October, 1868, said conveyance was held and operated as security for said indebtedness. Defendant denies that the chattel mortgage was the result of a combination and conspiracy between the parties thereto, for the purpose of cheating and defrauding the other creditors of Duggan, and that as to the allegation that the success of the said parties in hiding their realty afforded them encouragement in stowing away personalty from his, Duggan's, creditors, defendant passes by as impertinent matter, and fit only to be expunged. Defendant admits that Martin, at the October term, 1868, of the District Court of Arapahoe county, recovered a judgment against Duggan for $231.01, and also that Martin and Barnes, at said term of said court, recovered judgment against Duggan for $1,365.99. Defendant neither admits nor denies that executions were issued on both of said judgments of 21st of December, 1868, nor that by virtue of said executions the lands referred to were levied upon and sold by Browne, or that afterwards, on November 4th, 1869, Browne received a sheriff's deed for the same. Defendant avers that she has no knowledge or information thereof on which to base belief, etc. Denies that Browne became the owner of said land by virtue of said sheriff's deed, or continued to own it from 4th of November, 1869, to 7th of February, 1872, but alleges that any sale of said land under execution issued to Browne, if any was made, was subject to the lien of said mortgage by virtue of said conveyance and mortgage; that at the time the amount and nature of the lien to Smith was well known to both said Martin, Barnes and Browne; that at the time of said execution and sale, Browne was the attorney of said Smith and said judgment creditors, and any purchase of land by him was with full notice of the lien of said Smith and sub-

ject thereto; that Smith conveyed said land to defendant by quit-claim deed, for a consideration of about $2,800, but she denies any and all combinations, conspiracies, etc., for any purpose whatsoever.    That on 20th of April, 1870, Duggan was justly indebted to Smith in the sum of $2,791.98, and that said indebtedness was secured by mortgage dated March 19th, 1866, from Duggan to Smith; that on said 20th of April, 1870, for good consideration, defendant purchased said indebtedness from Smith and thereupon received from him the said quit-claim deed as and for an assignment of the said lien or mortgage, and at the same time received from Duggan his promissory note for the amount last named, payable to herself on or before the first day of November, 1870, with interest at the rate of $2\frac{1}{2}$ per cent. per month.    Denies that deed from Smith to her was a sham, etc., upon the rights of Browne in said lands, or that the lands, notwithstanding her deed, remained the property of Browne.    Denies that she ever had nor now has more than a mere naked legal title, without interest therein. Neither admits nor denies that nothwithstanding conveyance from Smith to her, Duggan remained on said lands and continued to occupy them.    Denies that neither Smith nor herself ever exercised any ownership or authority over said lands. Admits, 31st of October, 1870, Duggan gave her a chattel mortgage on certain personalty, described, etc., being on said lands, and in the actual occupation of Duggan.    Admits that mortgage purported to be given to secure payment of $3,116.29 on or before 31st of October, 1871, but denies that in order to carry out and consummate the fraud perpetrated by Duggan, Smith and defendant on the rights of said Browne in said land, said chattel mortgage was given.    Denies that said chattel mortgage was given without any consideration, and that it was a cheat, or sham, or fraud, etc., or intended to defraud, etc.    Admits she did not foreclose chattel mortgage.    Avers she elected to rely upon her lien upon said lands. Avers that on the 31st October, 1870, when chattel mortgage was given, Duggan was indebted to her in the sum of $3,116.29,

and such debt was a lien on said land by virtue of said mortgage; that at that time Duggan gave her his note for said sum, payable to her in one year, with interest 2½ per month, which was secured by said lands. Admits that on 7th February, 1872, Browne made to one Mary A. Duggan a quit-claim deed for said land, but as to the consideration in the deed being paid, in fact, has no information, etc. Avers that deed to Mary A. Duggan had no part or lot in the transaction, but that her name was inserted in the deed with the view of complicating the title to said lands, and so to defeat, if possible, the lien of this defendant. Avers that deed made by Browne to Mary A. was without her knowledge or consent; that she gave no consideration therefor, but in the transaction represented her husband James, and the effect of the deed was the same as if it had been given directly to her husband. Admits that on 7th of February, 1872, Mary A. gave her note, payable in six months, to O'Neil, for the sum of $2,100, as stated in bill, but avers that legal effect of note is a question of law. Admits that on 7th February, 1872, Mary A. with her husband purported to execute a mortgage on said lands. Avers that if any deed was given by James Duggan and wife to O'Neil it was subject to the Ross lien. Neither admits or denies that Mary A. Duggan failed to pay said note at maturity. Admits that note was assigned by O'Neil to Dee, and that he foreclosed said pretended mortgage by Duggan and wife, and that by virtue thereof, the land was sold and bid in by Dee, 16th February, 1874; but as to the effect of the foreclosure and sale, it is left as a question of law for the court. Avers that such sale in no wise affected Ross' lien on said lands. Admits that on 16th December, 1874, Dee received a master's deed for the land. Admits that on 18th March, 1876, Dee gave O'Neil quit-claim deed for said lands. Defendant avers that she had the first lien on said lands to secure sum of about $7,316.00, which is justly due and owing her from said Duggan, and that any and all rights which O'Neil or any one else may have or claim in or to said land, are subject to her said lien. Avers

that said judgments so recovered, as before admitted, against Duggan by Martin and also Martin & Barnes, were recovered upon an indebtedness subject to the lien created to Smith, and that Browne's purchase of said land at the time and in the manner set forth, was with a full knowledge of the lien of Smith, and with the intention and expectation on the part of Browne that the lien of Smith would have first to be fully satisfied; that O'Neil at the time of taking his pretended mortgage was well and fully advised of the nature and extent of the defendant's claim and lien, and he took said pretended mortgage with the intention and expectation that the lien of the defendant would have to be fully satisfied in preference to his; and defendant avers, that the lands have, since the mortgage was given in March, 1866, until the present time, in whosesoever hands they have been, and whatever transactions have been made in reference to them, continued to be charged with the said lien of Ross. Denies any and all manner of unlawful combination, etc.

To this answer O'Neil filed a general replication

It was then stipulated that the case of O'Neil against Ross, and the case of Ross against Duggan et al., should be consolidated and proceed together as one case.

The cause was then referred to the master to take proof. Upon the coming in of the master's report the court entered a decree substantially as follows:

That the deed of conveyance, bearing date April 20th, 1870, made by Smith to Ross, describing premises, being lands in controversy, be set aside, vacated, and declared null and void as against O'Neil; that Ross is the mere custodian of legal title of said real estate in trust for O'Neil, who is adjudged and decreed the real owner of said land, and entitled to have the legal title thereto conveyed to him by Ross; that the said Ross shall convey such title to O'Neil on the incoming of court on the morning of the 17th of October, 1878, and in default thereof the master is appointed a special commissioner of the court to convey said title; that a certified copy of the de-

cree shall be recorded in Arapahoe county; that Ellen Ross pay the costs in the consolidated suit.

To reverse this decree Ellen Ross prosecutes this appeal.

Messrs. BUTLER, WRIGHT & KING, for appellant.

Mr. B. M. HUGHES, Mr. C. S. EYSTER, and Mr. E. P. HARMAN for appellee.

STONE, J.—Appellant, as a creditor of Duggan, was secured by a deed from him of certain lands, which deed it is admitted was intended as a mortgage only, and further security was given by a chattel mortgage of personal property.

O'Neil, one of appellees, claims title to the land by virtue of a sale under a junior lien created by a judgment against Duggan.

The two cases of *Ross* v. *Duggan et al.* and of *O'Neil* v. *Ross et al.*, were consolidated in the court below by stipulation, and are to be considered together as one.

The material allegations in the bill of O'Neil, as ground for the relief prayed are, *first*, a charge of conspiracy to defraud, and the perpetration of fraud on the part of Smith, Duggan and appellant in the several conveyances of the land to Smith and appellant; and, *second*, that, admitting the original validity of the lien created by the deed to appellant, it was lost by reason of the negligence with which appellant was chargeable, in the dissipation of the personal property, which was one of the two funds upon which her security rested.

It is contended by counsel for appellees, that " a deed absolute on its face, but intended as a mortgage only, is fraudulent and void as to creditors." A few decisions may be found which go to this extent. But the weight of authority, as well as the sounder reasoning upon principle, favors the different doctrine that such a conveyance is an *indicium* of fraud, as against existing creditors, and is not conclusive evidence of fraud; it is a badge of fraud, merely, which may be removed by evidence of honest intent. *Gibson* v. *Seymore*, 4 Vt. 521; *Harrison* v.

*Phillips' Academy*, 12 Mass. 456; *Stevens* v. *Hinckley*, 43 Me. 440; *Emmons* v. *Bradley*, 56 Me. 333; *Bank* v. *Jacobs*, 10 Mich. 349. See also, Bump on Fraud. Conv. p. 84, and cases cited.

The allegations of fraudulent intent of conspiring to defraud, and of the perpetration of fraud by the parties to the deeds in controversy, are not well supported by the testimony in the case, and we cannot but conclude from the whole evidence in the record, that the *bona fide* character of the indebtedness which the deeds were given to secure, and the good faith of the parties to the transaction, are fairly established.

The second ground upon which the Ross lien is attacked— that it became lost or impaired by the acts of the lienor— raises a more difficult question. We fully recognize the force of the equitable doctrine applied to creditors having liens on different funds, namely, that a person having two funds to satisfy his demands, shall not, by his election, disappoint a party who has only one fund (*Aldrich* v. *Cooper*, 8 Ves. 388), or as stated by Chancellor Kent with his accustomed clearness in *Cheeseborough* v. *Millard*, 1 Johns. Ch. 409: "If a creditor has a lien on two different portions of land, and another creditor has a lien of a younger date on one of these parcels only, and the prior creditor elects to take his whole demand out of the land on which the junior creditor has a lien, the latter will be entitled either to have the prior creditor thrown upon the other fund, or to have the prior lien assigned to him, and to receive all the aid it can afford him." This principle, derived from the civil law and incorporated into the English chancery law, is sometimes called the doctrine of substitution, and is most usually applied to the marshaling of assets in bankruptcy cases and the like. The operation of the principle is not affected by the nature of the property which constitutes the double fund, but applies wherever a paramount creditor holds collateral security, or can resort collaterally to other real or personal estate for the satisfaction of the debt. *DeLeyster* v. *Hildreth*, 2 Barb. Ch. 109.

The rule briefly stated by Chief Justice Marshall, in *Allston* v. *Munford*, 1 Brockenbrough, 279, is : if a creditor having a choice of two funds, should, contrary to equity, so exercise his legal rights as to exhaust that fund to which alone other creditors can resort, then those other creditors will be placed by a court of equity in his situation, so far as he has applied their fund to the satisfaction of his claim. And undoubtedly where a loss of such fund is occasioned by collusion of a creditor with the debtor, or by willful or intentional neglect to preserve the fund, relief, if invoked in the proper time and manner, may be afforded the other creditors who have been injured thereby, under the general principles of equity involved in the case. But it must be admitted, that in any case the prior incumbrancer is entitled to notice of the existence of the junior claim, and of the intention of the junior creditor to compel the former to make his election in compliance with this principle. *Taylor's Executors* v. *Maris*, 5 Rawle, 55; *Guion et al.* v. *Knapp et al.* 6 Paige, 35; *Clark* v. *Bancroft*, 13 Iowa, 321.

The right of the junior creditor to have this principle administered is ordinarily enforced by a decree of subrogation. 2 Lead. Cas. in Eq. 261, 262, and cases cited. He cannot administer this right himself, upon his own assumption that the acts of the prior creditor have conferred such right. This is for the chancery court to pronounce upon. 1 Story's Eq. Jurisp. Sec. 633, 639, *et seq.*

So far as the record shows, the acts of the appellant as the prior lienor in this case, in so far as they affected the loss of the personal property in question, were not affirmative, directly resulting in the loss, and after proper notice of the rights of other creditors. The cases where this doctrine has been applied are based on *affirmative acts* of the senior lienor releasing the fund to the prejudice of the junior. I have been unable to find any case applying the doctrine where there was a loss of the fund by *neglect* of the senior lienor.

What measure of diligence does the rule impose after no-

tice? It must be borne in mind that the rule itself is based largely on an equity against the debtor, to wit: that the accidental resort of the senior lienor to the doubly charged estate, and the consequent exhaustion of that security, shall not enable the debtor to get back the second estate discharged of both debts. *Vide* notes to *Aldrich* v. *Cooper,* 2 Lead. Cas. in Eq. 264.

While, therefore, the rule would forbid affirmative acts, and doubtless collusive acts defeating the junior creditor, it would not impose upon the senior any additional care or expense touching the preservation of the second fund. Gross negligence will not charge him; it would not be *mala fides,* but only evidence of it. His negligence must be *wanton,* such as to amount to a constructive fraud. He must be a willful party to the dissipation or loss of the fund. *Covanhoven* v. *Hart,* 21 Pa. St. 500; *Emmons* v. *Bradley,* 56 Me. 337.

The second fund in this case was in its nature an imperfect security. It consisted of chattels remaining in the hands of the debtor. It was peculiarly liable to loss or dissipation, and largely at the mercy of the debtor. One having real estate security would take the other as a contingent, not as a certain security.

In such case, clearly, the senior is not accountable as for a perfect security. Otherwise, it would be substituting the junior to the first and not the second fund before the prior encumbrancer had been put in default.

If both funds were in existence at the time the execution was issued on the Martin judgment, that judgment became a lien on both funds under the statute ; but the judgment creditor was not entitled at his own election to push the older creditor off the real property and compel her to satisfy her debt out of the more precarious security afforded by the chattel mortgage. He was not entitled to thus administer his own rights. All he could demand would be that the senior creditor should not *release* the second fund, or contribute to its loss by that degree of negligence we have specified. The chattel mort

gage executed to Smith must be disregarded in the consideration of the case, for the reason that it does not appear from the evidence that the property described in said mortgage was in existence at the time Smith was chargeable with notice of the junior lien.

What notice, if any, did the appellant have of the rights of the junior creditor? It will not do to say that the Martin judgment furnished sufficient notice. Chancellor Kent, in *Cheesboro* v. *Millard, supra,* says:—"If the judgment creditor in this case had given notice to the owner of the first mortgage, before the arrangement and discharge took place, of the equity which he claimed and expected, I might probably have been inclined to have stayed to a certain extent the operation of a second mortgage. But there is no evidence or even ground for presumption, that either Marvin or Millard, the owners of the mortgages, knew of the existence of the judgment when the arrangement was made and carried into effect. *They were not bound to search for the judgment, and the record was no constructive notice to them;* and as this rule of substitution rests on the basis of mere equity and benevolence, the creditor who has thus disabled himself from making it, is not to be impaired thereby, provided he acted without knowledge of the other's rights, and with good faith and just intentions, which is all that equity in such case requires. ' The other debtor and sureties,' to adopt the observations of *Pothier,* ' might, as well as the creditor, have taken care of the right of hypothecation which he has lost; they might summon him to interrupt at their risk the third purchasers, or to oppose the decree. It is only in the case in which they may have put the creditor *in default* that they may complain that he has lost his hypothecation.' "

The answer to appellant's bill alleges that the lien of complainant on the goods of the debtor under the chattel mortgage was lost by her neglect, although she was notified by Browne (the purchaser of the land sold under the Martin judgment), "to collect the same and to take possession of the property and sell the same in discharge of the debt."

Ross v. Duggan et al.

The nature of the notice referred to is not shown in this answer, nor in the cross-bill of O'Neil; but Eyster, a witness for appellees, discloses somewhat the character of this notice, by stating that "in the fall of 1871 Browne filed a bill in chancery to set aside certain deeds, and to redeem the property from the alleged mortgage; that Smith, Duggan and Ross were made defendants to that bill."

Counsel for appellees, in their printed briefs, refer to this bill, set out its contents, and state that service was had, an answer filed by Smith, one of the defendants; that the bill was filed September 23, 1871; that on February 7, 1872, Browne sold the land to the wife of the debtor Duggan, and that afterwards, April 6, 1872, the bill was dismissed, and counsel for appellees thereupon insist that Browne thus notified appellant that he was then the owner of the land, and that she must first sell the personal property under the chattel mortgage before she could claim the benefit of her lien on the land.

Counsel on both sides stipulate that this bill of Browne, and the proceedings thereon, together with certain other matters of evidence, may be considered by this court, the same as though incorporated in the record, from which such evidence was by oversight omitted, as the stipulation alleges; but since the stipulation was filed in this court in the first instance, we cannot consider it under our former rulings in the cases of *Molandin* v. *C. C. R. R. Co.* 3 Col. 173, and *Capelli* v. *City of Denver* id. 235, where it is held that this court cannot consider matters of evidence upon stipulation merely, and not properly brought up by the record. We are therefore, without any record evidence of what this Browne bill contained, other than we have mentioned; we do not know judicially what proceedings were had upon said bill, and are therefore unable to determine whether the decree of dismissal upon the bill and answer was not *res judicata* as to the matters therein set up and answered, and whether the same might not be pleaded in bar of the rights now set up by appellee O'Neil, who claims under Browne's title; or whether the bill contained the necessary

averments to constitute it such a notice to appellant as is now claimed for it; or whether, if sufficient, the dismissal of the bill was not a withdrawal of notice to appellant of whatever rights were then claimed by Browne, and of whatever duty appellant could be chargeable with, under proper notice.

Certain it is, however, that the bill of O'Neil is defective in two particulars:

*First:* In not alleging against the appellant such affirmative or conclusive and intentional acts of negligence, resulting in the loss of the chattel fund, as would constitute ground for subrogation of the junior creditor to the prior right of the appellant to the other fund.

*Second:* If the Browne bill is relied on as the notice by which the appellant is to be bound, then it should have been shown by the answer or cross-bill of appellees that the Browne bill contained the proper averments to constitute it a sufficient notice, to wit : that at the time of the filing of the Browne bill, the goods and chattels which were the subject of the chattel mortgage were then in existence, were intact and available as a fund from which appellant could realize all or a part of her debt for which such fund was a security.   2 Lead. Cas. in Eq. 238.

Without this, there could have been but one fund at the time the question relating to it was raised, and hence the doctrine contended for would have no foundation 'in fact.

Neither the answer to appellant's bill nor the cross-bill charges such acts of negligence against appellant, nor alleges such notice of her responsibility and duty under the *status* of the two funds and the several rights of the creditors respecting the same, as are sufficient to cast upon her a liability for the alleged dissipation and loss of the fund created by the chattel mortgage.

There is, therefore, no equity for the decree of the court below to rest upon, and it will be reversed, and the cause remanded, with leave to both parties to amend their pleadings, if they or either of them so elect, without prejudice to the testimony already taken.

*Decree reversed.*