De Peyster *v.* Hildreth.

---

## DE PEYSTER *vs.* HILDRETH and others.

S. & W. H. executed a bond and mortgage, to the complainants. At the time of the giving thereof, S. S. & Co. were the holders of a judgment against the mortgagors, which was a lien upon the mortgaged premises, and upon other real estate of the mortgagors. An execution had been issued upon that judgment, and levied upon a store of goods. The complainant had notice of that judgment. Subsequently to the execution of the mortgage to the complainant, S. S. & Co. issued a second execution upon their judgment, and made an arrangement with the defendants therein by which they withdrew the first execution from the hands of the sheriff. The result of this arrangement was to give other executions, then in the hands of the sheriff, a preferable lien upon the personal property of the mortgagors, and to subject their real estate, upon a part of which the complainant's mortgage was a lien, to liability for the amount due on that judgment. The agent of S. S. & Co., after leaving their second execution dormant in the hands of the sheriff for about fifteen months, caused the mortgaged premises to be advertised and sold thereon, and purchased them, in the name, and for the benefit, of S. S. & Co. Previous to that sale, the complainant had filed his bill in this cause to foreclose his mortgage, making S. S. & Co. parties. And he had obtained a regular decree, which gave his mortgage a preference over their judgment; they having neglected to appear in the cause. The mortgaged premises were advertised to be sold under that decree, on the 30th of July, 1846; previous to which time S. S. & Co. applied to the chancellor to open their default, and the decree, and for leave to them to appear, and put in an answer. The chancellor took time to consider the application; and in the meantime he directed the master to proceed and sell the premises according to the directions in the decree. The master sold the mortgaged premises on the 12th of September, 1846, and they were bid in by the complainant, and were conveyed to him : and the report of the sale was duly confirmed. On the 6th of October, 1846, the chancellor denied the

De Peyster *v.* Hildreth.

application of S. S. & Co., without reserving to them any right to renew it. On the 1st day of February, 1847, S. S. & Co. applied to the court for leave to renew their motion to open their default, and the decree of foreclosure in this cause; or that the complainant might be decreed to redeem their judgment. After the decision of the chancellor upon the first application, and before notice was given of the second, the complainant sold and conveyed a portion of the premises purchased by him at the master's sale, to T. A. L. The complainant, in his affidavit in opposition to the second application, stated that he believed it was the intention of S. S. & Co. to cast a cloud upon his title by taking a conveyance from the sheriff upon the sale under their judgment. He therefore asked for an order, on the foot of the decree, restraining them from doing so.

*Held,* 1. That the court was not authorized, upon this application, to make an order to restrain S. S. & Co from taking a sheriff's deed upon the sale under their judgment. That if any relief of that kind was necessary, the proper remedy of the complainant was to file a bill against S. S. & Co., after they should have taken such deed, to remove the cloud thus cast upon the title.

2. That the recording of the master's deed was constructive notice to all subsequent purchasers, from any of the parties to the decree, that the rights which such parties had in, or the liens which they had upon, the mortgaged premises, at the time of the decree, were cut off by the master's sale.

3. That no court, in the exercise of a sound discretion, should set aside a regular decree of foreclosure and sale, for the mere purpose of giving to a defendant a nominal priority in payment, out of the proceeds of the sale of the mortgaged premises, where it appears that the cash value of the property is such that it is wholly immaterial which party is entitled to priority.

4. That it is out of the usual course of practice to make an application for the same relief, a second time, where the first motion or petition has been denied, upon the merits, without reserving to the applicant the right to renew his application.

5. That S. S. & Co. had not used due diligence, in making their renewed application, after they had notice of the decision against them upon the first.

6. That it was inequitable, as to the complainant, for S. S. & Co. to consent to withdraw the first execution from the hands of the sheriff, so as to discharge the personal estate which the defendants in the judgment had at the time of issuing that execution, and to leave their judgment to be satisfied out of the real estate which had previously been mortgaged to the complainant.

7. That the complainant's equity, to be paid out of the proceeds of the mortgaged premises, was greater than that of S. S. & Co.; who had lost the opportunity to have their judgment satisfied out of other property of their judgment debtors, by their own acts, and by their negligence. And that the complainant having obtained a decree, whereby he has secured to himself the legal right to priority of payment, the court ought not to interfere to deprive him of it.

THIS was an application, on the part of the defendants Suydam, Sage & Co., who were judgment creditors of the mortgagors, S. & W. Hildreth, to renew a motion to open the order

De Peyster *v.* Hildreth.

taking the complainant's bill as confessed against them and the decree of foreclosure in this cause; or that the complainant might be decreed to redeem their judgment which was a lien upon the mortgaged premises. At the time of the giving of the complainant's bond and mortgage, which was for money lent, Suydam, Sage & Co. were the assignees of a judgment against the mortgagors; and against two other persons who were the principal debtors, and primarily liable for the payment of that judgment. The judgment was at that time also a lien upon other real estate, of the defendants therein. And an execution had also been issued thereon, upon which the sheriff had levied on a store of goods. But Suydam, Sage & Co. had a mortgage, given by S. & W. Hildreth, to secure acceptances which had before been made, as well as acceptances thereafter to be made for them; which mortgage was a lien upon some of the other real estate of the Hildreths, subsequent to the judgment, but prior to the date of the complainant's mortgage. The complainant's attorney, at the time of the giving of the mortgage to him, was aware of the existence of the judgment. But being informed that the execution thereon had already been levied upon property sufficient to satisfy it, without resorting to the mortgaged premises, and that it was only kept on foot for the purpose of obtaining satisfaction out of the property of the other two defendants therein, who were primarily liable for its payment, the whole amount of the loan was paid over to the Hildreths, and applied to the payment of debts due to Suydam, Sage & Co. and others; leaving that judgment unsatisfied on record. About six months after the giving of the complainant's mortgage, Suydam, Sage & Co. caused a second execution to be issued, upon the judgment assigned to them; and an arrangement was subsequently made between them and the defendants in that judgment, by which the execution, which had previously been issued and levied upon the store of goods, was withdrawn from the hands of the sheriff. The result of this arrangement was to give other executions, then in the hands of the sheriff, a preferable lien upon the personal property of the Hildreths, and to subject their real estate, upon a part

of which the complainant's mortgage was, to liability for the amount due on that judgment. And the agent of Suydam, Sage & Co., after leaving their second execution dormant in the hands of the sheriff for about fifteen months, caused the mortgaged premises to be advertised and sold upon that execution, and purchased them, in the names, and for the benefit, of Suydam, Sage & Co. Previous to that sale, the complainant had filed his bill in this cause to foreclose his mortgage, making the owners of that judgment parties. And he had obtained a regular decree, which gave his mortgage a preference over their judgment; they having, through inadvertence, neglected to employ a solicitor to appear and protect their claim to a preference in payment out of the proceeds of the sale of the mortgaged premises. The mortgaged premises were advertised to be sold, under the decree in this cause, on the 30th of July, 1846; previous to which day, Suydam, Sage & Co. applied to the chancellor, ex parte, and obtained an order for the complainant to show cause, on the first Tuesday of August, why their default and the decree should not be opened, and they be permitted to appear and put in an answer; and that in the meantime the sale be stayed. Upon the hearing of that motion, the chancellor took time to consider the same. And in the meantime he directed the master to proceed and sell the premises according to the directions contained in the decree; the complainant's counsel having stipulated to pay the amount due upon the judgment, out of the proceeds of the sale, in case that application should be decided in favor of the petitioners, Suydam, Sage & Co. The master proceeded and sold the mortgaged premises, on the 12th of September thereafter, and the same were bid in by the complainant for $8000; leaving due to him upon his mortgage about $9600. The premises were conveyed to the complainant accordingly, and the report of the sale was duly confirmed. On the first Tuesday of October, the chancellor denied the application of Suydam, Sage & Co., without reserving to them any right to renew it. The order thereon was entered the 26th of the same month; and on the 12th of November was served upon the agent of the solicitor for the

petitioners. On the 16th of January, 1847, notice of the present application was served, for the first day of the January term; but was subsequently countermanded, and was re-served for the second Monday in term. After the decision of the chancellor upon the petition of July, 1846, and before the complainant had any intimation of an intention on the part of the petitioners to renew the motion, he sold and conveyed a considerable portion of the premises, purchased by him at the master's sale, to T. A. Lawrence; and received a conveyance of other lands in part payment of the purchase money, and a bond and mortgage in full for the residue thereof. The complainant, in his affidavits in opposition to the motion of Suydam, Sage & Co., stated that he believed it was their intention to cast a cloud upon his title by taking a conveyance from the sheriff, upon the sale of the premises under their judgments. And his counsel asked for an order, on the foot of the decree, restraining them from taking such sheriff's deed.

*D. Greig,* for Suydam, Sage & Co.

*H. F. Clark,* for the complainant.

THE CHANCELLOR. The court is not authorized, upon this application, to make an order to restrain the petitioners from taking a sheriff's deed upon the sale under their judgment. If any relief of that kind is necessary, the proper remedy of the complainant will be to file a bill against them, after they shall have taken such sheriff's deed, to remove the cloud which they have cast upon his title. Had the complainant's bill been in the usual form, stating that Suydam, Sage & Co. had or claimed some interest in the mortgaged premises, as purchasers, mortgagees, or otherwise, which interests, if any, had accrued subsequent to the complainant's mortgage and were subject thereto, the taking of the sheriff's deed might cast a cloud upon the title of the purchaser under the decree. For the plaintiffs in the judgment not being parties to the foreclosure suit, and the fact that those who were made parties, and who became

De Peyster v. Hildreth.

the purchasers at the sheriff's sale, were the assignees of the judgment, at the time of the decree, not being stated in the bill, it might not appear upon the face of the enrolled decree that the rights acquired by them, as purchasers at the sheriff's sale, were overreached and cut off by the decree, and by the master's sale, made in pursuance of such decree. Here, however, it appears from the bill itself that the defendants Suydam, Sage &. Co. were the assignees of the Cook judgment, when this foreclosure suit was commenced. And the decree declares that the defendants in the suit, and all persons claiming under them, or any of them, subsequent to the commencement thereof, shall be barred of all equity of redemption or other claim to the premises sold by the master. The recording of the master's deed, therefore, is constructive notice to all subsequent purchasers, from any of the parties to the decree, that the rights which such parties had in, or the liens which they had upon, the mortgaged premises, at the time of the decree, were cut off and extinguished by the master's sale.

The affidavits on the part of these applicants, as to the value of the mortgaged premises, if they related to its actual value at the time of the master's sale, would of themselves be sufficient to defeat this application. For if the actual cash value was sufficient to pay both the judgment and the amount due upon the complainant's decree, the proper remedy of Suydam, Sage & Co. was to have attended the sale and bid up the property to a sum sufficient to pay the decree, and the amount of their bid at the sheriff's sale, with interest thereon. No court, in the exercise of a sound discretion, ever set aside a regular decree of foreclosure and sale, for the mere purpose of giving a defendant a nominal priority in payment, out of the proceeds of the sale of the mortgaged premises; when the papers on which his application was founded, showed that the cash value of the property was such that it was wholly immaterial, which party was entitled to priority. It is true, these applicants cannot now obtain the property by paying the amount due to the complainant, with interest and costs. But, no reason whatever is shown why they did not attend the sale and bid in the premises, if

they really believed the value of the property was what they have gotten others to swear the premises are now worth, and thereby save the amount of their judgment and interest.

Again, it is out of the usual course of practice to make the same application for relief a second time, where the first motion or petition has been denied upon the merits, without reserving to the applicant the right to renew the same. That, however, would not have been an insuperable objection to the present motion, if the applicants had in fact made out a new case entitling them to relief. But they have not made use of due diligence, in making their renewed application, after they heard of the decision against them upon the first. The mortgaged premises were sold by the master as early as the 12th of September; and the decision upon the former application was made early in October. The clerk of their own counsel swears he saw a statement of the decision published, and informed Mr. Sage of it, as soon as the first of November. And the order of the court was actually received by their solicitor on the 16th of that month. They had ample time, therefore, to renew their application on the first Tuesday of January. And, with reasonable diligence, they might have made their motion on the first Tuesday of December; if they had attended to it immediately after they were informed of the decision. By their neglect to do so, a bona fide purchaser, who has not had notice of this application, has become the owner of about 200 acres of the mortgaged premises. And the decree and master's sale cannot now be opened without materially affecting his rights as such purchaser; as the master's sale, which was entire, cannot be set aside in part, under the circumstances of this case. For these reasons, I should be obliged to deny this application, even if the merits of the case were with the applicants.

But there is nothing in the merits of the case, as now presented, to induce me to change the opinion which I expressed upon the former application. Indeed the papers now before me make out a much stronger case of equity in favor of the complainant's retaining the priority acquired by his decree, than was presented at that time. I am now satisfied that if Suy-

dam, Sage & Co. had proceeded with the execution which was in the hands of the sheriff, upon their judgment, at the time of the giving of the complainant's mortgage, the whole amount of that execution would have been realized by them, without resorting to the land mortgaged to the complainant; or to the land previously mortgaged to Suydam, Sage & Co., to secure their advances and acceptances for the Hildreths. They, too, were aware of the existence of the complainant's mortgage, and that his solicitor expected the judgment was to be paid out of other property, upon which it was a lien. Under such circumstances it was inequitable, as to the complainant, for them to consent to withdraw the execution from the hands of the sheriff; so as to discharge the personal estate which the defendants in the judgment had at the time of issuing that execution, and to leave their judgment to be satisfied out of the real estate which they knew had, before that time, been mortgaged to the complainant. That they were ignorant that an execution had been issued upon the assigned judgment, at the time they issued their second execution thereon, in August, 1844, might have been some excuse for the issuing of the last execution. But as they show that there was then no personal property which was not fully covered by other executions, there was no excuse for withdrawing the first execution, after they were aware of its existence; and thereby discharging the only personal property upon which either execution was a lien.

The complainant's equity to be paid out of the proceeds of the mortgaged premises, is therefore greater than that of Suydam, Sage & Co.; who have lost the opportunity to have their judgment satisfied, out of other property of their judgment debtors, by their own acts, and by their negligence. And the complainant having obtained a decree, whereby he has secured to himself the legal right to priority of payment, the court ought not to interfere to deprive him of it. (*Burchard* v. *Phillips and others*, 11 *Paige's Rep.* 66.)

This application must be denied with costs to be taxed.