# Gusdorf & Co. *v.* Ikelheimer & Co.

*Bill in Equity by Attaching Creditor to compel prior Judgment Creditor with Execution to exhaust Collaterals held by him, before resorting to Funds in Hands of Sheriff.*

1. *Marshaling securities; right of attaching creditor to compel prior execution creditor to exhaust collaterals, before resorting to funds in the sheriff's hands.*—A judgment creditor, with an execution levied on personal property of value sufficient to satisfy his judgment, having received from his debtor, as collateral security, certain choses in action, which were collected by him before sale by the sheriff of the property on which the execution was levied, will be compelled by a court of equity, on a bill filed for that purpose by an attaching creditor, whose attachment was subsequently levied on the same property, and who has reduced his demand to judgment, to apply the money realized from the collaterals in satisfaction of his execution, thereby exonerating the proceeds of the sale of the property levied on, to that extent, from liability to the execution, for the benefit of the attaching creditor, and for the satisfaction of his junior lien.

2. *Same; collection realized from collaterals a payment pro tanto of judgment.*—The sum realized by collection from the collaterals, in such case, having been collected before satisfaction was obtained through the medium of the execution, was immediately applied, by operation of law, to the satisfaction of the judgment, to enforce which the execution was issued, extinguishing it *pro tanto*.

3. *Same; right of attaching creditor not affected by subsequent agreement between judgment creditor and debtor.*—An agreement between the plaintiff and defendant in execution, made after the attachment was levied, and notice thereof had been given to them, to the effect that the

VOL. LXXV.

[Gusdorf & Co. v. Ikelheimer & Co.]

money realized from the collaterals should only be applied to the payment of any balance of the judgment remaining unsatisfied by the sale under execution, can not impair or affect the right of the attaching creditor to have the two funds thus marshaled for his benefit.

4. *Same; fund realized from the collaterals can not be garnished in hands of judgment creditor.*—The money realized from the collaterals having been immediately applied, by operation of law, to the satisfaction of the judgment of the creditor holding them, other creditors can not, by garnishments subsequently served on him, intercept the money, or prevent the first attaching creditor from enforcing its application to the satisfaction of the execution.

5. *Same; jurisdiction of court of equity not affected by summary remedy in court of law.*—The summary jurisdiction which the court of law may exercise over the sheriff and the parties to the execution and attachment issuing from it, in determining between the rival claimants the priorities of their legal liens, and in controlling and compelling the proper application of the money collected, if it extends to such case, does not take away the jurisdiction of a court of equity to marshal the securities so as to adjust the equitable rights of the rival claimants.

APPEAL from City Court of Selma.

Heard before Hon. JON. HARALSON.

This was a bill in equity, exhibited by E. Ikelheimer & Co. against M. Gusdorf & Co., S. Lehman, Hellman & Herman and Keifer Bros.; and was filed on 15th June, 1882. The purpose of the bill, and most of the material facts disclosed by the record are stated in the opinion, rendering necessary only a brief supplemental statement in this report. Hellman & Herman and Keifer Bros. sued out attachments against the defendant Lehman, which were levied on the personal property on which the execution in favor of Gusdorf & Co. was levied, and were "further levied" by summoning Gusdorf & Co. to answer as garnishees and debtors to Lehman. These attachments were subsequent to the attachment sued out against Lehman by the complainants. No garnishment, however, was issued on the attachment sued out by the complainants. All of said proceedings were in the City Court of Selma, on the law side thereof. Lehman made no defense; and Gusdorf & Co. made no claim to the fund realized from the collaterals held by them; they admitting that they were stakeholders, and expressing a willingness to account, as such, for the fund to those entitled thereto. Hellman & Herman and Keifer Bros. separately demurred to the bill, assigning numerous grounds. The court having overruled the demurrers, they separately answered. The grounds of defense relied on by them on their demurrers and in their answers are sufficiently indicated in the opinion.

On the hearing, had on the pleadings and proof, a decree was entered, granting relief to the complainants; and from that decree this appeal was prosecuted. The final decree and

[Gusdorf & Co. v. Ikelheimer & Co.]

the decree overruling the demurrers to the bill are here made the basis of the assignments of error.

Wm. C. Ward, for appellants. (1) "The remedy by attachment is a special statutory remedy—it is in derogation of the common law ; and in resorting to it, and deriving rights from it, the statute must be pursued. If from any cause the remedy it affords is not full and complete, a court of equity can not cure the deficiency."—*Phillips* v. *Ash*, 63 Ala. p. 418 ; Drake on Att. § 4 *a*, citing *McPherson v. Snowden*, 19 Md. 233. See also *Janney v. Buell*, 55 Ala. 408 ; Story's Eq. Jur. § 61 ; Sedg. on Stat. & Con. Law, 343. The levy of the attachment "from its date creates a lien, a right to charge the property levied upon with the payment of the judgment, in priority of any subsequent alienations the defendant may make, or of any subsequent incumbrances he may create, or of subsequent liens arising by operation of law in favor of other creditors." The right is given to charge the particular property levied upon ; and neither directly nor indirectly can this right be extended to reach property not levied upon.—*Phillips v. Ash*, *supra*. (2) Equity will not aid an attaching creditor to marshal assets of the debtor. This point elaborately discussed, with citation of following authorities, *arguendo : Shedd v. Bank of Brattleboro*, 32 Vt. p. 709 ; *Westmoreland v. Foster*, 60 Ala. 448 ; 1 Story's Eq. Jur. (12th Ed.) § 634 *a* and note. The gravamen of the bill amounts to this : Gusdorf & Co. have a prior lien on the stock of goods by their execution. They also have other security, to-wit, the collaterals ; but Ikelheimer & Co. have a junior lien also on the stock of goods, but not on the collaterals. Therefore, equity will compel Gusdorf & Co. to exhaust the collaterals before deriving any benefit from the sale of the goods. In this way, Hellman & Herman and Keifer Bros. must be displaced altogether, to let the complainants in, although they, by their attachments, have, as to the collaterals, a junior lien to Gusdorf & Co. Thus the court undertakes, between *rival* attaching creditors, in a race of diligence, to marshal assets, and to take from one what he has captured, and bestow it upon another. (3) The appellees had notice that Gusdorf & Co. held and were collecting the collaterals before the property seized was sold. By timely notice to the sheriff, he could have been compelled to pay the proceeds of the sale into the law court, or to pay the same out under orders of the court ; and appellees' right to this fund could have been settled.—44 Ala. 554. But having let this opportunity pass, appellees lost their chance at law against the sheriff. They can now have no remedy against Gusdorf & Co.—*Kelly v. McCaw*, 29 Ala. 227. But see 29 Am. Dec. p. 582. (4) Although a

lien creditor has the right to the aid of a court of equity to compel a prior lien creditor, having other security, to exhaust that other security first, yet, when he waits until the prior lien has appropriated the common security, he is without remedy in a court of equity. He is too late.—1 Story's Eq. §§ 633, 642 ; 28 Am. Dec. p. 622 ; 29 Am. Dec. p. 582, and authorities cited ; 6 Ohio, 163 ; 13 Ohio, 197. " The right to marshal will never be applied to the detriment of either claimant, or of the person against whom the claim lies."—1 Story's Eq. §§ 559–60 ; *McArthur v. Martin*, 23 Minn. 74 ; *Marr v. Lewis*, 31 Ark. 203 ; *Taylor's appeal*, 81 Pa. St. 460.

WHITE & WHITE, *contra.*—(1) When complainants' attachment was levied on the goods of Lehman, it became and was a lien from *that time* on the same, subject alone to the prior lien in favor of Gusdorf & Co. for the payment of their judgment. Code, 1876, § 3280. This lien could not be divested by the levy of a subsequent attachment or garnishment.—1 Brick. Dig., p. 162, § 105 ; *Johnson v. Burnett*, 12 Ala. 743. (2) Gusdorf & Co. having received $743.40 on choses in action which were held as collateral to their judgment, before the sale by the sheriff, the law applied said sum immediately to the payment of the judgment.— *Webster v. Singley*, 53 Ala. 208 ; *Hunt v. Nevers*, 15 Pick. 500 ; *Dismukes v. Wright*, 3 Dev. & Bat. (N. C.) 78 ; *Ware v. Russell*, 57 Ala. 43. It follows that, in not crediting the judgment with said sum, Gusdorf & Co. received that much more of the proceeds of the sheriff's sale than they were entitled to, and which belonged and should have been paid to the complainants. This is just as true as if Lehman had paid Gusdorf & Co. that much money on the judgment before they received any thing from the sheriff. (3) When said sum was realized by Gusdorf & Co. out of.these collaterals, it was their duty to the complainant to apply it to the satisfaction of their judgment; and a court of equity, considering as done that which they ought to have done, will compel them to account to the complainants for the surplus, after their debt has been fully satisfied. They had no right or power over this fund, except to apply it to the payment of the judgment for which they held it in trust; and they could not decline to execute that trust to the prejudice of complainants.—*Schiffer v. Feagin*, 51 Ala. 337 ; *Hicks v. Bingham*, 11 Mass. 300 ; *Toomer v. Randolph*, 60 Ala. 360 ; *Sanders v. Knox*, 57 Ala. 81 ; *Donald v Hewitt*, 33 Ala. 548. The parties being before the court, and the fund being in possession of Gusdorf & Co., equity will lay its hands upon it, and enforce the *lien* and right of the complainants, especially as this can be done without prejudice or injury to Gusdorf & Co.

[Gusdorf & Co. v. Ikelheimer & Co.]

The complainants did not lose their right to this money because Gusdorf & Co. wrongfully received it from the sheriff. *Westmoreland v. Foster*, 60 Ala. 455; *Cawthorn v. McCraw*, 9 Ala. 519; *Abraham v. Hall*, 59 Ala. 391. (4) The complainants' right to this fund is not a legal claim on which they could have sued at law. It was neither *jus in re* nor *jus ad rem ;* but a mere lien, a right to have it applied to the payment of their debt, which, under the authorities cited *supra*, could only be enforced in equity. · Complainants can no more maintain an action at law for this money than they could have maintained detinue or trover for the goods, if they had gone into the hands of Gusdorf & Co. after the levy and before the sale. *Webster v. Singley, supra*, and *Hurt v. Redd*, 64 Ala. 87, distinguished. The sheriff having paid the money over, in obedience to the mandate of the execution, complainants' remedy at law against him is gone, and it remains only for a court of equity to follow up the fund and to enforce complainants' lien upon it.—*Crenshaw v. Harrison*, 8 Ala. 342; *Patton v. Hamner*, 28 Ala. 618; *Mason v. Watts*, 7 Ala. 703. Even if an action at law would lie, this is one of those cases of trust, a claim to equitable relief, which will support a bill in equity.—*Price v. Pickett*, 21 Ala. 743; 60 Ala. 455. (5) We cite the following authorities to show complainants' right to the money in controversy, and that, if they had the legal title and not a mere lien, they could have brought *assumpsit* for it.—*Sherrod v. Hampton*, 25 Ala. 652; *Knox v. Abercrombie*, 11 Ala. 997; *Chenault v. Walker*, 22 Ala. 275. (6) The subsequent agreement between Lehman and Gusdorf & Co. as to the application of the funds realized from the collaterals, was a fraud on complainants' rights.—2 Watts, 228; 53 Ala. 211; 27 Am. Dec. 301, 305–6; 11 Am. Dec. 795. It became and was the legal duty and obligation which Gusdorf & Co. owed the complainants, to preserve the security afforded by the collaterals, on which the complainants had no lien; and if they failed to do so, they must account for the resulting injury.—*Cheesebrough v. Millard*, 1 Johns. Ch. 409, 412–13; *Gordon v. Bell*, 50 Ala. 213; 2 Am. Lead. Cases, 261–2; *Dorr v. Shaw*, 4 Johns. Ch. 17; *Henderson v. Huey*, 45 Ala. 275. The rights of the complainants were not affected by said agreement. This point discussed at length. (7) The position that a court of equity will not marshal assets except in favor of a party holding a *contract* lien, is not sound. The remedy lies in favor of a judgment creditor.—*Dorr v. Shaw*, 4 Johns. Ch. 17; 1 Story's Eq. Jur. 634. And an attaching creditor can file a creditor's bill.—13 Cal. 626; 16 N. J. Eq. 300; 6 Cal. 376; 13 Cal. 76; 4 Sandf. Ch. 565.

[Gusdorf & Co. v. Ikelheimer & Co.]

BRICKELL, C. J.—The appellants, Gusdorf & Co., were judgment creditors of Solomon Lehman, and caused an execution issuing upon their judgment to be levied upon personal property of value sufficient to satisfy it. At the time of the judgment and levy, they had also choses in action transferred to them by the judgment debtor, as collateral security for their debt. The appellees were general creditors of Lehman, and, on the day succeeding the levy of the execution, they caused an attachment to issue, which was levied upon the same personal property on which the execution was levied. The attachment suit was duly and successfully prosecuted to judgment in favor of the appellees. The personal property was, or the proceeds of sales were more than sufficient to satisfy the execution of Gusdorf & Co., and were by the sheriff applied to its satisfaction. Before this application of the proceeds of sales was made, Gusdorf & Co. had made collection of the collaterals to the amount, as alleged in the original bill, of seven hundred and forty-three 41-100 dollars, which yet remains in their hands; and the purpose of the original bill is to compel them to apply that sum in satisfaction of their execution, exonerating the proceeds of the sales of the property to that extent from liability to the execution, for the benefit of the appellees, and the satisfaction of their junior lien. This, of course, involves a decree compelling them to pay that sum to the appellees. The equities of the appellees and of Gusdorf & Co., upon this state of facts, we first propose to consider.

The general principle, upon which the equity of the bill is founded, is, that if one creditor has a lien upon, or interest in, or the security of two funds for a debt, and another creditor of the same debtor has a lien upon, or interest in, or the security of one only of the funds for another debt, the latter has the right in equity and good conscience to compel the former first to resort for satisfaction to the fund on which he alone has the lien, interest, or security, if that course is necessary for the satisfaction of both debts, whenever it will not trench upon his rights, or operate to his prejudice.—1 Story's Eq. Jur. § 633; *Nelson v. Dunn*, 15 Ala. 501; *Chapman v. Hamilton*, 19 Ala. 121. "The nature of the property which constitutes the double fund does not affect the operation of the principle; and it applies whenever a paramount creditor holds collateral security, or can resort collaterally to other real or personal property for the satisfaction of the debt."—2 Lead. Eq. Cases (Part 1), 262. In *DePeyster v. Hildreth*, 2 Barb. Ch. 109, a creditor had a judgment which was a lien upon real estate, and upon which execution had issued and was levied upon personal property sufficient for the payment of the judgment; and it was held, he was bound to exhaust the levy, in exoneration of the real estate for

[Gusdorf & Co. v. Ikelheimer & Co.]

the relief of mortgagees taking a mortgage subsequently to the judgment. And in *Ingalls v. Morgan*, 6 Selden (10 N. Y.), 178, a judgment creditor having a lien on real estate which was sold by the debtor, and notes for the purchase-money taken and transferred to the creditor, it was held he was bound to collect and apply the notes in satisfaction of the judgment. Without losing all recourse upon the lands in the hands of a subsequent purchaser, he could not surrender the notes to the debtor from whom he received them. The court said : " The facts present a case where the creditor has a lien upon two funds for the security of his debt, and another party has an interest in one only of these funds, without any right to resort to the other. In such a case, equity will compel the creditor to take his satisfaction out of the fund upon which he alone has an interest, so that both parties may, if possible, escape without injury." There are numerous cases to be found in the books in which a court of equity has intervened and applied this doctrine, without inquiry or distinction whether the property constituting the two funds or securities was of the same nature; whether the one was real, and the other personal ; or, if both were personal, whether the one was visible, tangible, capable of actual possession, and the other a *chose* resting in action. The distinction can only be made, when a necessity for it may be shown to exist, to prevent the operation of the principle from working to the prejudice of the paramount creditor.—*Goss v. Lester*, 1 Wisconsin 51. The whole foundation of the principle, it is said, is the natural equity and benevolence which requires every one to exercise his rights, so far as he can without inconvenience to himself, in a way that will avoid causing loss to others.—1 Story's Eq. Jur. § 633.

An attachment is a statutory process ; and its purpose is, that the jurisdiction of the court, in the ulterior proceedings, may be the more effectual, and that, security for the judgment obtained may be afforded to the plaintiff. From the day it is made, the levy creates a lien, taking precedence of all subsequent alienations, or of subsequent incumbrances, made or created by the debtor, and of subsequent liens acquired by other creditors by the operation of law, or of legal process. The lien, it is true, is, primarily, incipient, inchoate, and conditional, operating only on the particular property which is the subject of the levy, and will be defeated if judgment is not obtained, upon which process can issue for the subjection of the property to sale. And it is, of consequence, as is insisted by counsel, less stringent, frailer, and more uncertain than the lien of an execution.—*Phillips v. Ash*, 63 Ala. 414. But that the lien is of statutory derivation, and the mode of its enforcement is prescribed by statute, is not of itself an objection

[Gusdorf & Co. v. Ikelheimer & Co.]

to compelling a creditor having prior liens so to use them, that the attaching creditor, after he has obtained judgment, shall not be defeated. Real estate is by statute subjected to the satisfaction of legal process, and liens of judgments or executions operating upon it are derived wholly from statutes declaring them. A court of equity, in this country, does not more often exercise its jurisdiction to marshal assets, and in the exercise of the jurisdiction compelling creditors or others to exhaust funds or securities to which they alone can resort, than in the exoneration of lands for the benefit of creditors having liens upon them by judgment, or by execution derived from statute. The existence of the jurisdiction, and the propriety of its exercise, have not been questioned. A mechanic's lien is the creature of statute, and yet, in the application of this doctrine, it has been regarded as standing upon equal ground with a mortgage, affecting to the same extent legal and equitable rights.—*Hamilton v. Schwehr*, 34 Md. 108 ; *Kenny v. Gage*, 33 Vt. 302. Whether the court would intervene to marshal assets, and to apply this doctrine, at the instance of an attaching creditor, before he had by judgment perfected the lien of the attachment; or whether, in such case, intervention would not be limited to a preservation of things and of the rights of the parties *in statu quo*, if it could be done without injustice to the prior creditor, is not a question now arising. The appellees had perfected their lien by judgment before exhibiting the bill. The prior creditors had notice of the levy of the attachment, and, so far as they could without inconvenience to themselves, or without trenching upon the rights of others, were bound in good conscience so to employ their prior lien upon the property levied upon, and the collaterals they had received as security for their debt, as not to disappoint and defeat the levy in the event it was perfected by judgment.

The collaterals, the choses in action transferred to Gusdorf & Co., were intended by the debtor, and were by them received, as a source or fund from which the debt reduced to judgment should be paid. It is true that, by taking the collaterals, the right to proceed by execution on the judgment was not intended to be delayed or postponed, and the creditor had the right to retain the collaterals, while pursuing legal remedies upon the judgment, and, if necessary to his full security and satisfaction, would not have been interfered with, or compelled to resort to the one in preference to the other. But having realized, by collection from the collaterals, the sum now in controversy, before satisfaction was obtained through the medium of the execution, that sum was by operation of law immediately applied to the satisfaction of his debt, extinguishing

it *pro tanto*. A payment to him by the debtor of a like sum, at that instant of time, would not have been for that purpose more effectual. The source or fund from which moneys are derived often directs and controls their appropriation. And when a creditor receives moneys, derived from sources or funds which have been devoted to particular purposes, he is without right to appropriate them to other uses.—1 Am. Lead. Cases, 341 ; *Schiffer v. Feagin*, 51 Ala. 335 ; *Webster v. Singley*, 53 Ala. 208.

But it is said that after the levy of the execution and the transfer of the collaterals, there was an agreement between the debtor and the creditor, that there should be no appropriation of the moneys derived from the collaterals, until it was ascertained that the proceeds of the sale of the property levied on by execution were not sufficient to pay the debt. If any such agreement was made, it was subsequent to the levy of the attachment at the suit of the appellees, and after debtor and creditor had notice or knowledge of it. The levy created a lien, which could not be impaired by the subsequent acts or agreements of the debtor ; and the creditor, having notice of it, was disabled from entering into any agreement by which the equitable obligation to exhaust the moneys arising from the collaterals, before resorting to the proceeds of the sales of the property levied upon and sold under execution, would be relieved for the benefit of the debtor, and by which he could regain the collaterals, or acquire the moneys realized from them, discharged from both debts.

All that it is needful to say now in reference to the subsequent garnishments at the suit of Hellman & Herman and Keifer & Brothers is, that there was not a debt owing from Gusdorf & Co., the garnishees, to Lehman, the debtor in attachment. A garnishment is a species of attachment, and like it is strictly a statutory remedy. It lies only for the subjection of debts, or demands, upon which the defendant in attachment can in his own name and right recover at law in an action of debt, or of *indebitatus assumpsit*. There was no debt due or owing by Gusdorf & Co. to Lehman, when the garnishment was served, nor could a debt arise from the transaction and relations existing between them, unless the money realized from the collaterals had exceeded the debt to the security of which they were appropriated. The money it is intended by the garnishments to reach, is not due or owing to Lehman ; it forms a payment ; it is not a debt ; it is an extinguishment *pro tanto* of the debt due to Gusdorf & Co. Of the character of payment it was not deprived because Gusdorf & Co. did not make an application of it, retaining it in their hands, separate from the moneys received from the sheriff. The law, in view of the

source from which it was derived, applied it in payment of the debt the collaterals from which it was realized were intended to secure.    This application, without infringing upon the equities of the appellees, of which they had notice, Gusdorf & Co. could not avoid or refuse, converting themselves into debtors of Lehman.

In addition, the rights and equities of the junior attaching creditors were subordinate to the rights and equities the appellees, as prior attaching creditors, had acquired by their superior diligence.    In courts of equity, as in courts of law, after-acquired rights by the employment of legal remedies yield precedence to clear rights acquired through like remedies.—*Herbert v. Mechanics' Building & Loan Association*, 17 N. J. Eq. 497.    Upon the whole case, it seems clear that Gusdorf & Co. had double security for the payment of their judgment, while the appellees had a claim upon but one species of the property, constituting their security.    From the fund upon which the appellees had no claim or lien, Gusdorf & Co. had in their possession a sum of money which it was their duty to apply in satisfaction of their judgment.    If the application had been made, as it could have been without injury or inconvenience, a corresponding sum the appellees would have realized from the sales of the property upon which they had a lien, junior to that of Gusdorf & Co.    Upon plain principles of equity and justice, they should be compelled to yield up the money derived from the collection of the collaterals, that it may be applied to the satisfaction of the judgment of the appellees. Otherwise, through mere wantonness, or caprice, or from mere indifference or favoritism, they would be permitted to work injury to another, of whose rights they had notice, and to whom they at least owed good faith.

When a sheriff, having collected money under legal process, is in doubt as to its proper appropriation, he may give notice to all parties in interest, make a statement of the facts, and apply to the court from which the process issued, and to which it is returnable, for its advice and direction.—*Henderson v. Richardson*, 5 Ala. 349.    The parties interested in the distribution of the money, or either of them, may also apply to the court for its directions to the sheriff, and for the determination of their respective rights.—*Turner v Lawrence*, 11 Ala. 426.    In either case, the application is summary, addressed to the inherent power of the court to control its own process, preventing its misuse or abuse, and protecting its officers against the conflicting claims of suitors.    The power has heretofore been exercised only when it was necessary to determine between rival claimants the priorities of legal liens, derived from legal process.    In its exercise the court has not assumed jurisdiction of

matters of purely equitable cognizance, nor has it undertaken to marshal assets, adjusting the equitable rights of rival claimants.— *Williams v. Rogers*, 5 Johns. 163 ; *Bruton v. Cannon*, Harper (S. C.) 389. The power the court exercises is of the same nature and character with that which is exercised in setting aside, upon motion, sales of land made under its process. It is not inconsistent with, nor in deprivation of the jurisdiction of a court of equity to interfere and grant fuller and more complete relief than can be obtained in a court of law.—*Ray v. Womble*, 56 Ala. 32 ; *Lockett v. Hurt*, 57 Ala. 198. The marshaling of assets is peculiarly of equitable cognizance, and it is in the exercise of this jurisdiction the court applies its own doctrine, that a creditor having the security of two funds shall not so exercise his rights as to disappoint another creditor, who has the security of only one of them ; a doctrine it often enforces through subrogation, which it alone can decree. In the present case, the jurisdiction of the court is undoubted.

We find no error in the record, and the decree of the city court must be affirmed.